# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

HAMPDEN COUNTY, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: **18 · 812**

JEFFREY A. NEECE,
    **Plaintiff,**

v.

CITY OF CHICOPEE and
SHARYN RILEY,
    **Defendants.**

)
)
)
)
)
)
)
)
)

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**

NOV - 2 2018

CLERK OF COURTS

## COMPLAINT AND JURY DEMAND[1]

Plaintiff Jeffrey A. Neece by and through counsel, alleges as follows:

### PARTIES

1. Jeffrey A. Neece ("Mr. Neece" or "Plaintiff") is an adult residing at 52 Ridge
   Trail Road, Westfield, Hampden County, Massachusetts, 01085.

2. The City of Chicopee ("the City") is a city located within Hampden County
   within the Commonwealth of Massachusetts.

3. Sharyn Riley ("Ms. Riley") is the City Auditor for the City of Chicopee. Upon
   information and belief, Sharyn Riley is an adult residing in the City of Chicopee
   within Hampden County, Massachusetts.

---

[1] Plaintiff will be seeking leave to amend this Complaint and Jury Demand as follows: (1) upon completion
of the 90-day Massachusetts Commission Against Discrimination waiting period, Mr. Neece will seek
leave to amend the Complaint to include claims of retaliation in violation of G.L. c. 151B, § 4 and 42
U.S.C. 2000e-3, and (2) upon completion of the 180-day waiting period for the presentment of claims
under G.L. c. 258, § 4, Mr. Neece will seek leave to amend the Complaint to include claims of negligence
(including, but not limited to, breach of duty not to retaliate and/or otherwise violate the law with regard to
Mr. Neece's employment, and claims of negligent supervision and negligent training) and negligent
infliction of emotional distress.

~~~
                                    one
-99 Paid - $    210.00  Cash - Check
urcharge Paid - $  /5.00  Cash - Check
ecurity Fee - Paid - $  20.00  Cash - Check
                  BH
~~~

4. The City and Ms. Riley are/were employers of the Plaintiff for the purposes of the Fair Labor Standards Act ("FLSA") and the Massachusetts Wage Act ("Wage Act"). See 29 U.S.C. § 203 (d); G.L. c. 149, § 150.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to G.L. c. 212, § 3.

6. This Court has personal jurisdiction over the City of Chicopee because it is a city within the Commonwealth of Massachusetts. The acts and omissions of the City of Chicopee which gave rise to this Complaint also occurred in the Commonwealth.

7. This Court has personal jurisdiction over Sharyn Riley because she is employed by the City of Chicopee, lives in the City of Chicopee (upon information and belief), and the acts and omissions of Ms. Riley which gave rise to this Complaint occurred in the Commonwealth.

8. Venue is proper in this Court pursuant to G.L. c. 223, § 1, because Plaintiff and Ms. Riley reside in this judicial district and the City is located in this judicial district.

## FACTUAL ALLEGATIONS

9. Mr. Neece commenced working with the City of Chicopee on or about June 17, 2013, as Superintendent of the City's Department of Public Works by way of an Employment Contract ("Employment Contract"), a copy of which is attached as Exhibit A.

10. Article II of the Employment Contract states, "This agreement shall begin on June 17, 2013 and terminate on June 30, 2018, a period of five (5) years and thirteen (13) days." See Exhibit A, Article II.

11. Article III of the Employment Contract states, "The compensation for the Superintendent shall be as follows:… Fiscal year 2017- $98,000." See Exhibit A, Article III.

12. Article IV of the Employment Contact states, "The Superintendent shall have a paid vacation as follows: Four (4) weeks per calendar year." See Exhibit A, Article IV.

13. Article VIII of the Employment Contract states, "The Superintendent shall be eligible for such medical dental, and life insurance coverage and rates as is currently provided to all municipal employees or such successor medical insurance coverage as may be implemented for said employees." See Exhibit A, Article VIII.

14. Article XI of the Employment Contract states, "The Superintendent shall be eligible for longevity as provided to municipal employees under the UFCW Administrative collective bargaining unit. Payroll will be made on the first payroll in July." See Exhibit A, Article XI.

15. Article II of the Employment Contract states, "The terms and conditions of this contract shall be automatically extended and shall remain in effect until the approval of any subsequent contract." See Exhibit A, Article II.

16. In or about 2015, the City advertised a job with the title of Motor Equipment
    Operator Repairperson, which fell under Mr. Neece's supervision, authority, and
    control.

17. In conjunction with that opening, Mr. Neece and others interviewed Ms. Nicholle
    Huber ("Ms. Huber").

18. As the appointing authority, Mr. Neece ultimately offered the position to Ms.
    Huber through the Human Resources Department.

19. Ms. Huber accepted the offer.

20. Without obtaining input or direction from Mr. Neece, the City by way of Ms.
    Raisa Riggott of the City's Human Resources Department, rescinded the job
    offer.

21. Mr. Neece found out that the offer was rescinded from Ms. Huber subsequent to
    the rescission.

22. Upon learning that the City had rescinded the offer of employment to Ms. Huber,
    Mr. Neece took actions, including, but not limited to:

    a.  Mr. Neece verbally disclosed to Mayor Kos in substance that he (Mr.
        Neece) believed the City had acted in a discriminatory fashion in
        rescinding Mr. Huber's offer of employment.

    b.  Mr. Neece objected to and expressed reticence about participating in the
        hiring process for the position going forward based upon his reasonable
        belief that the City's actions in rescinding the offer had been
        discriminatory,

    c.  Mr. Neece told Mayor Kos that he refused to give his (Mr. Neece's)

official recommendation for any other candidate for the position. The

basis for Mr. Neece's refusal was his reasonable belief that the City's

actions in rescinding the offer had been discriminatory.

23. Ms. Huber brought legal action against the City, alleging she was discriminated

against by the City ("Huber case").

24. On or about October 16, 2017, Mr. Neece was deposed in the Huber case. Mr.

Neece truthfully testified at his deposition and his testimony specifically

referenced statements made by Mr. Allen Ryczek, notification by himself (Mr.

Neece) to the City about Mr. Ryczek's statements, statements by other City

employees relating to the job requirements for the Motor Equipment Operator

Repairperson position, his (Mr. Neece) not being the person who rescinded the

offer, the typical hiring process and who from the City that process typically

involved, and his (Mr. Neece's) discomfort with how the rescission of the offer

was handled.

25. Subsequent to Mr. Neece testifying in the Huber case, the City's attorney stated to

another City employee who was also going to be deposed in the Huber case that

she should feel free during her deposition to make damaging statements against

Mr. Neece since the City would not take any action against Mr. Neece because it

was afraid that he would sue the City for retaliation. No damaging statements

against Mr. Neece would have been warranted.

26. On or about March 5, 2018, Mr. Neece notified City Mayor Richard Kos about a

lawsuit that he was involved in with the Town of Southwick relating, in part, to

retaliation by the Town of Southwick. During the conversation, Mr. Neece expressly told Mayor Kos that he had filed a Charge of Discrimination against the Town of Southwick based upon the same claims that comprised his lawsuit pending at the time of the March 5th conversation.

27. On March 7, 2018, Mayor Kos met with Mr. Neece in the presence of Evelyn Rivera-Riffenburg, Director of Human Resources, and John Beaulieu, Chief of Staff, who were present at Mayor Kos' request ("March 7th Meeting").

28. During the March 7th Meeting, Mayor Kos threatened Mr. Neece that he had already instructed Ms. Rivera-Riffenburg to post a job ad for the Superintendent position and that Mr. Neece should prepare himself to apply for the position.

29. Mayor Kos also stated to Mr. Neece that he intended to do a job performance review of Mr. Neece in which he would "pick apart" his job description and give him a "bad review."

30. The March 7th Meeting was the first time Mayor Kos (Mr. Neece's supervisor) had ever notified Mr. Neece that Mayor Kos' thought there was any issue with Mr. Neece's job performance.

31. Mayor Kos actually never did a negative performance review of Mr. Neece.

32. The March 7th Meeting was extremely distressing for Mr. Neece and caused Mr. Neece great embarrassment, as Mayor Kos made the threats and accusations in front of Ms. Rivera-Riffenburg and Mr. Beaulieu, imparting a false impression that Mr. Neece had engaged in poor performance of his job.

33. The City issued Mr. Neece a letter dated March 15, 2018, which purported to serve as a "verbal warning" to Mr. Neece. Included in the letter were a series of

6

false statements. The March 15th letter was very distressing for Mr. Neece due to the false information contained therein, which could be viewed by anyone with access to the letter.

34. Following the March 7th Meeting, Mayor Kos refused to communicate directly with Mr. Neece directly ever again until their meeting on June 28, 2018.

35. This resulted in Mr. Neece not having access to his direct supervisor for purposes of addressing City business.

36. During the course of the winter of 2017 and spring of 2018, Mr. Neece (with Mayor Kos' authorization) conducted a search to fill the position of Parks Superintendent for the City.

37. Mr. Neece conducted interviews of candidates along with Ms. Riggott and Mr. Al Stryzak, reviewed the candidates' qualifications, and narrowed down the list of individuals appropriate for hiring to two individuals.

38. On or about April 3, 2018, during a meeting between Mr. Neece, Mayor Kos, and Ms. Rivera-Riffenburg, Mayor Kos informed Mr. Neece that he was appointing an individual to serve as interim Parks Superintendent and appointing an individual to serve as Assistant to the Department of Public Works Superintendent. Appointment of anyone to these positions fell under the authority of Mr. Neece, not Mayor Kos.

39. Mayor Kos' action in appointing the individuals was inappropriate and in violation of at least the City's Code and G.L. c. 41, § 69E, which states that the Superintendent of Public Works "shall, subject to the approval of the board,

appoint such assistants, agents and employees as the exercise and performance of his powers, rights and duties may require."

40. On or about June 27, 2018, Mr. Neece was informed by a City Councilman that during the executive session of the City Council held on April 24, 2018, the City's attorney counseled the City Council about a proposed settlement in the Huber case and as part of that counsel the attorney expressly stated to the City Council for their consideration in deciding about settlement that "Jeff Neece's testimony was not favorable to the City's position."

41. On or about June 28, 2018, Mayor Kos met with Mr. Neece and advised him that since he was taking June 29, 2018 as a vacation day, his last day of work for the City of Chicopee would be June 28, 2018 ("June 28th Meeting").

42. During the June 28th Meeting, Mayor Kos gave Mr. Neece a letter that set out concerns Mayor Kos purported to have with Mr. Neece's job performance.

43. The letter stated, "In light of my concerns, this is to confirm that I have decided not to renew your employment contract nor extend it in any way when it expires on June 30, 2018."

44. During the June 28th Meeting, despite the next scheduled pay-date for the City being Friday, July 6, 2018, the City paid Mr. Neece certain amounts, including, but not limited to, his wages through June 30, 2018, accrued vacation pay, and ten extra weeks of pay (purportedly severance pay).

45. The manner in which Mayor Kos conducted the June 28th meeting and his actions and those of his agents subsequent to the meeting caused Mr. Neece severe emotional distress, including, but not limited to, the fact:

a. Mayor Kos conducted the meeting Mr. Neece's office, rather than at his (Mayor Kos') office.

b. Mayor Kos included in the meeting at least five individuals in addition to himself (the Mayor) and Mr. Neece: Mr. John Beaulieu, Ms. Rivera-Riffenberg, Mr. Strepka, the City Messenger, and a member of law enforcement.

c. Mayor Kos had the police waiting in the parking lot of the Department of Public Works garage.

d. In front of many staff and City employees, Mayor Kos required Mr. Neece to relinquish (i) the keys to the City's truck (for which he had driving privileges) and (ii) the City-owned phone which Mr. Neece had used during the tenure of his Employment Contract.

e. Mayor Kos had the City messenger and Mr. Strepka drive Mr. Neece home rather than allowing him to drive home in the City-issued vehicle Mr. Neece had been using during the tenure of the Employment Contract, despite the initial term of the Employment Contract lasting through June 30, 2018.

46. As of the date of the filing of this Complaint, the City Council has not approved any subsequent contract for the position Superintendent of the City's Department of Public Works.

47. Subsequent to June 30, 2018, despite the terms and conditions of the Employment Contract automatically extending beyond June 30, 2018 due to the City not having approved a subsequent contract for the position of Superintendent of the

City's Department of Public Works, the City and Ms. Riley have not complied with the terms of the Contract by, at the least, not paying Mr. Neece his wages, longevity, and vacation time provided for by the Contract, and not paying and/or providing other benefits provided for in the Employment Contract, including, but not limited to, various insurances.

48. Defendant Sharyn Riley is appointed by the City of Chicopee as the City Auditor.

49. M.G.L. c. 149, § 148 states, "Every public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees, shall be deemed to be an employer of such employees, and shall be responsible under this section for any failure to perform his official duty relative to the payment of their wages or salaries, unless he is prevented from performing the same through no fault on his part."

50. Defendants have failed to fully pay Mr. Neece the wages owed him under the Employment Contract since July 1, 2018, which include, but are not limited to, at least his salary wages, the value of the vacation time he has accrued, and his longevity pay.

51. Additionally, since July 1, 2018, the City has failed to (a) provide Mr. Neece with the medical and dental insurance provided for in the Employment Contract, and (b) maintain life insurance coverage for Mr. Neece as provided for in the Employment Contract.

52. The Massachusetts Attorney General's Office issued Plaintiff an authorization for immediate private suit for his claims by letter dated October 19, 2018.

53. The City took at the least the following actions/omissions against Mr. Neece at least in part in retaliation for his disclosing to Mayor Kos his belief the City had acted in a discriminatory fashion and Mr. Neece objecting/refusing to participate in the continued hiring of someone else into the position based upon his reasonable belief the City acted in a discriminatory fashion in rescinding Ms. Huber's offer of employment:

   a. The City's attorney stated to the City employee that she should feel free during her deposition in the Huber case to make damaging statements against Mr. Neece.

   b. On March 7, 2017, Mayor Kos (a) threatened Mr. Neece that he had already directed Ms. Riggott to post his job and stated he was going to intentionally give Mr. Neece a bad job performance review (which, notably, he never did), and (b) falsely stated in front of other people that Mr. Neece had performed badly at his job, which was untrue.

   c. Mayor Kos' refused to have direct contact with Mr. Neece subsequent to March 7, 2018 in his role as Mr. Neece's supervisor, despite Mr. Neece's repeated attempts to speak/meet with Mayor Kos about City matters.

   d. Mayor Kos issued Mr. Neece a written "verbal warning" on March 15, 2018, which contained false statements and misrepresentations regarding Mr. Neece's job performance.

   e. Mayor Kos appointed individuals to positions that Mr. Neece had the authority to fill.

   f. The City failed to renew Mr. Neece for a subsequent employment contract.

11

g. The City breached Mr. Neece's Employment Contract subsequent to June 30, 2018 by

   i. Failing to fully pay Mr. Neece the wages owed him under the Employment Contract since July 1, 2018, which include, but are not limited to, at least his salary wages, the value of the vacation time he has accrued, and his longevity pay, and

   ii. Failing to (a) provide Mr. Neece with the medical and dental insurance provided for in the Employment Contract, and (b) maintain life insurance coverage for Mr. Neece as provided for in the Employment Contract.

54. The City took at the least the following actions/omissions against Mr. Neece at least in part in retaliation for Mr. Neece opposing the City's discriminatory rescission of the job offer to Ms. Huber and Mr. Neece testifying in the Huber case and Mr. Neece having filed the MCAD charge and complaint against the Town of Southwick:

   a. The City's attorney stated to the City employee that she should feel free during her deposition in the Huber case to make damaging statements against Mr. Neece.

   b. On March 7, 2017, Mayor Kos (a) threatened Mr. Neece that he had already directed Ms. Riggott to post his job and stated he was going to intentionally give Mr. Neece a bad job performance review (which, notably, he never did), and (b) falsely stated in front of other people that Mr. Neece had performed badly at his job, which was untrue.

c.  Mayor Kos' refused to have direct contact with Mr. Neece subsequent to March 7, 2018 in his role as Mr. Neece's supervisor, despite Mr. Neece's repeated attempts to speak/meet with Mayor Kos about City matters.

d.  Mayor Kos issued Mr. Neece a written "verbal warning" on March 15, 2018, which contained false statements and misrepresentations regarding Mr. Neece's job performance.

e.  Mayor Kos appointed individuals to positions that Mr. Neece had the authority to fill.

f.  The City failed to renew Mr. Neece for a subsequent employment contract.

g.  The City breached Mr. Neece's Employment Contract subsequent to June 30, 2018 by

   i.  Failing to fully pay Mr. Neece the wages owed him under the Employment Contract since July 1, 2018, which include, but are not limited to, at least his salary wages, the value of the vacation time he has accrued, and his longevity pay, and

   ii.  Failing to (a) provide Mr. Neece with the medical and dental insurance provided for in the Employment Contract, and (b) maintain life insurance coverage for Mr. Neece as provided for in the Employment Contracttermination Mr. Neece's employment purportedly effective June 30, 2018.

55.  The City is liable for the acts of its employees, officers, and agents.

56.  The Defendants' actions/omissions have caused Mr. Neece harm, including, but not limited to, (a) severe emotional distress, (b) physical harm, including but not

limited to: severe anxiety, headaches, trouble sleeping, loss of appetite, and

stomach aches, and (c) pecuniary harm.

## COUNT ONE
### Violation of the Wage Act, G.L. c. 149, § 148
### Both Defendants

57. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs
as if fully set forth herein.

58. The Wage Act requires an employer to pay weekly or bi-weekly each such
employee the wages earned by him within six days of the termination of the pay
period during which the wages were earned.  See G.L. c. 149, § 148.

59. Mr. Neece commenced working with the City of Chicopee on or about June 17,
2013, as Superintendent of the City's Department of Public Works by way of the
Employment Contract.

60. Article II of the Employment Contract states, "This agreement shall begin on June
17, 2013 and terminate on June 30, 2018, a period of five (5) years and thirteen
(13) days. See Exhibit A, Article II.

61. Article II of the Employment Contract states, "The terms and conditions of this
contract shall be automatically extended and shall remain in effect until the
approval of any subsequent contract." See id.

62. The City Council has not yet approved any subsequent contract for a
Superintendent for the City's Department of Public Works.

63. By their conduct of failing to fully and timely pay Mr. Neece at least the
following, Defendants have violated the Wage Act and caused Plaintiff harm:

    a.   Salary wages owed Mr. Neece since July 1, 2018 under the Employment

         Contract, at the rate established by the Employment Contract,

    b.   The vacation time Mr. Neece has accrued since July 1, 2018 under the

         Employment Contract, and

    c.   The longevity payment owed Mr. Neece since July 1, 2018 under the

         Employment Contract.

64. Plaintiff has been damaged by the actions/omissions of the Defendants.

## COUNT TWO
### Violation of the Fair Labor Standards Act, 29 USC § 206
### (Both Defendants)

65. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs

    as if fully set forth herein.

66. The Fair Labor Standards Act requires an employer to pay its employees who

    engage in commerce during any workweek a minimum wage. See 29 USC §

    206(a).

67. Mr. Neece commenced working with the City of Chicopee on or about June 17,

    2013, as Superintendent of the City's Department of Public Works by way of the

    Employment Contract.

68. Article II of the Employment Contract states, "This agreement shall begin on June

    17, 2013 and terminate on June 30, 2018, a period of five (5) years and thirteen

    (13) days. See Exhibit A, Article II.

69. Article II of the Employment Contract states, "The terms and conditions of this

    contract shall be automatically extended and shall remain in effect until the

    approval of any subsequent contract." See id.

70. The City Council has not yet approved any subsequent contract for a
Superintendent for the City's Department of Public Works.

71. By their conduct of failing to fully and timely pay Mr. Neece at least the
following, Defendants have violated the Fair Labor Standards Act and caused
Plaintiff harm:

    a. Salary wages owed Mr. Neece since July 1, 2018 under the Employment
Contract, at the rate established by the Employment Contract,

    b. The vacation time Mr. Neece has accrued since July 1, 2018 under the
Employment Contract, and

    c. The longevity payment owed Mr. Neece since July 1, 2018 under the
Employment Contract.

72. Plaintiff has been damaged by the actions/omissions of the Defendants

### COUNT THREE
**Breach of Contract**
**(City of Chicopee)**

73. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs
as if fully set forth herein.

74. Mr. Neece commenced working with the City of Chicopee on or about June 17,
2013, as Superintendent of the City's Department of Public Works by way of the
Employment Contract.

75. Article II of the Employment Contract states, "This agreement shall begin on June
17, 2013 and terminate on June 30, 2018, a period of five (5) years and thirteen
(13) days. See Exhibit A, Article II.

76. Article II of the Employment Contract states, "The terms and conditions of this contract shall be automatically extended and shall remain in effect until the approval of any subsequent contract." See id.

77. The City Council has not yet approved any subsequent contract for a Superintendent for the City's Department of Public Works.

78. By their conduct of failing to continue to meet the terms and conditions of the Employment Contract since July 1, 2018, the City has breached the Employment Contract and caused Plaintiff harm, including, but not limited to:

   a.  Failing to pay Mr. Neece salary wages owed Mr. Neece since July 1, 2018 under the Employment Contract, at the rate established by the Employment Contract,

   b.  Failing to pay Mr. Neece the vacation time Mr. Neece has accrued since July 1, 2018 under the Employment Contract, and

   c.  Failing to pay Mr. Neece the longevity payment owed Mr. Neece since July 1, 2018 under the Employment Contract.

79. Additionally, the City breached the Employment Contract by failing subsequent to June 30, 2018, to maintain and provide medical, dental, and life insurance coverage for Mr. Neece.

80. Plaintiff has been damaged by the actions/omissions of the City.

**COUNT FOUR**
**Violation of G.L. c. 149, § 185**
**(City of Chicopee)**

81. Plaintiff re-alleges and reasserts the allegations in all of the preceding paragraphs as if fully set forth herein.

17

82. M.G.L. c. 149, § 185(b) states, "An employer shall not take any retaliatory action against an employee because the employee does any of the following:... (1) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, ... that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, ...;... (3) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, ...."

83. Upon learning that the City had rescinded the offer of employment to Ms. Huber, Mr. Neece took actions, including, but not limited to:

    a.  Mr. Neece verbally disclosed to Mayor Kos in substance that he (Mr. Neece) believed the City had acted in a discriminatory fashion in rescinding Mr. Huber's offer of employment.

    b.  Mr. Neece objected to and expressed reticence about participating in the hiring process for the position going forward based upon his reasonable belief that the City's actions in rescinding the offer had been discriminatory,

    c.  Mr. Neece told Mayor Kos that he refused to give his (Mr. Neece's) official recommendation for any other candidate for the position. The basis for Mr. Neece's refusal was his reasonable belief that the City's actions in rescinding the offer had been discriminatory.

84. The City took at the least the following actions/omissions against Mr. Neece at least in part in retaliation for his disclosing to Mayor Kos his belief the City had

18

acted in a discriminatory fashion and Mr. Neece objecting/refusing to participate in the continued hiring of someone else into the position based upon his reasonable belief the City acted in a discriminatory fashion in rescinding Ms. Huber's offer of employment:

    a.   The City's attorney stated to the City employee that she should feel free during her deposition in the Huber case to make damaging statements against Mr. Neece.

    b.   On March 7, 2017, Mayor Kos (a) threatened Mr. Neece that he had already directed Ms. Riggott to post his job and stated he was going to intentionally give Mr. Neece a bad job performance review (which, notably, he never did), and (b) falsely stated in front of other people that Mr. Neece had performed badly at his job, which was untrue.

    c.   Mayor Kos' refused to have direct contact with Mr. Neece subsequent to March 7, 2018 in his role as Mr. Neece's supervisor, despite Mr. Neece's repeated attempts to speak/meet with Mayor Kos about City matters.

    d.   Mayor Kos issued Mr. Neece a written "verbal warning" on March 15, 2018, which contained false statements and misrepresentations regarding Mr. Neece's job performance.

    e.   Mayor Kos appointed individuals to positions that Mr. Neece had the authority to fill.

    f.   The City failed to renew Mr. Neece for a subsequent employment contract.

    g.   The City breached Mr. Neece's Employment Contract subsequent to June 30, 2018 by

      i.  Failing to fully pay Mr. Neece the wages owed him under the Employment Contract since July 1, 2018, which include, but are not limited to, at least his salary wages, the value of the vacation time he has accrued, and his longevity pay, and

     ii.  Failing to (a) provide Mr. Neece with the medical and dental insurance provided for in the Employment Contract, and (b) maintain life insurance coverage for Mr. Neece as provided for in the Employment Contract

85. The City is liable for the actions of its employees, officers, and agents.

86. Mr. Neece has suffered emotional distress, physical harm, and pecuniary harm due to the City's actions/omissions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff claims:

1. Immediate reinstatement to the position of Superintendent of the City's Department of Public Works per the terms and conditions of the Employment Contract;

2. Monetary damages in an amount to be determined at trial;

3. Statutory treble damages for all unpaid wages and monies owed to Plaintiff;

4. Statutory interest at the rate of twelve percent (12%);

5. Attorney's fees and costs; and

6. Such other legal or equitable relief as the Court may award.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
JEFFREY A. NEECE,

By His Attorney,

Emily E. Smith-Lee (BBO#634223)
esmithlee@slnlaw.com
SLNLAW LLC
46 South Main Street
Sharon, MA 02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: October _____, 2018

21

Ex. A

## EMPLOYMENT CONTRACT
## JEFFREY NEECE, SUPERINTENDENT
## DEPARTMENT OF PUBLIC WORKS

This agreement made by and between the CITY OF CHICOPEE, a municipal corporation organized under the laws of the Commonwealth of Massachusetts, hereinafter referred to as the **City**, and Jeffrey Neece, Superintendent of the City's Department of Public Works, hereinafter referred to as the **Superintendent**. The City and the Superintendent for consideration stated herein mutually agree as follows:

## ARTICLE I
## SCOPE OF SERVICES

The Superintendent shall, in a full time position, be the head and have the general supervision of the Department of Public Works. The Superintendent shall perform all functions reserved to said Superintendent in the Department of Public Works Ordinance adopted by the City of Chicopee.

## ARTICLE II
## TERMS OF SERVICE

This agreement shall begin on June 17, 2013 and terminate on June 30, 2018, a period of five (5) years and thirteen (13) days. The Superintendent may be removed from this position only for documented just cause by the Mayor, with the approval of seven (7) members of the City Council, after public hearing held by the Mayor, upon a seven (7) day notice in writing at the residence of the Superintendent, setting forth the cause and the time and place of hearing.

The Superintendent of the Department of Public Works shall not be a Civil Service position. The Superintendent shall be deemed to be a managerial and confidential employee defined in Massachusetts General Laws, Chapter 150E and shall not be included in a Collective Bargaining unit or entitled to coverage under said Chapter.

The terms and conditions of this contract shall be automatically extended and shall remain in effect until the approval of any subsequent contract.

## ARTICLE III
## COMPENSATION AND BENEFITS

The compensation for the Superintendent shall be as follows:

| | |
|---|---|
| Fiscal Year 2014 - | $90,000 |
| Fiscal Year 2015 - | $92,000 |
| Fiscal Year 2016 - | $94,000 |
| Fiscal Year 2017 - | $96,000 |
| Fiscal Year 2018 - | $98,000 |

## ARTICLE IV
## VACATION

The Superintendent shall have a paid vacation as follows: Four (4) weeks per calendar year.

Vacations shall be scheduled with the approval of the Mayor upon fourteen (14) days prior notice, however, the Superintendent shall be allowed to schedule a vacation day or days with less notice with an oral request to the Mayor and the Mayor's approval shall not be unreasonably denied.

If the Superintendent has started his vacation and is called back to work, he shall be compensated for such reasonable costs incurred due to said callback to work, for example; plane fare, hotel costs, and such reasonably related expenses.

Time utilized to attend professional conferences and other related meetings will not be charged to vacation or sick leave time.

## ARTICLE V
## SICK LEAVE AND LEAVE OF ABSENCE

The Superintendent shall continue to receive his regular compensation during the period of his absence from duty because of total disability resulting from personal injuries, sickness, or illness not arising out of and in the course of his employment. Compensation for such disability shall be limited to 1-1/4 days for each month of service in the preceding Twelve (12) months, but no more nor less than Fifteen (15) days in any twelve (12) month period.

Any unused portion of any sick leave allowed hereunder may be accumulated without limit.

The City agrees to pay the Superintendent upon retirement, death or discontinuance of his service, (which shall not include dismissal for disciplinary reasons), his daily rate of pay times 2/5ths the number of sick days accrued as recorded at date of final separation on the City's payrolls.

Payment to the Superintendent for disability resulting from performance of duty:

1. The Superintendent shall receive compensation to be determined as follows: Total weekly salary due to Superintendent less actual amount received from Workers' Compensation insurance. The difference due and payable by the City of Chicopee shall be charged to the Superintendent's accrued sick leave or vacation time.

2. In the event that the full weekly salary is paid to the Superintendent due to lateness in payment by the Workers' Compensation insurance, the Superintendent will turn over to the City Treasurer any such applicable reimbursement finally paid by the Insurance Company.

The City agrees to reasonable consideration to request for unpaid leave of absence of up to One (1) year for sickness, accident, or any other valid cause. The Mayor shall have the authority to grant such leave of absence upon the written request of the Superintendent.

## ARTICLE VI
## PERSONAL LEAVE

The Superintendent shall be allowed Three (3) personal days per calendar year. The Superintendent shall be allowed to accumulate up to a maximum of Five (5) personal days per calendar year.

## ARTICLE VII
## HOLIDAYS

The Superintendent shall have the following paid holidays:

| | |
|---|---|
| ½ day before New Year's | Labor Day |
| New Year's Day | Columbus Day |
| Martin Luther King Day | Veteran's Day |
| Washington's Birthday | Thanksgiving Day |
| ½ day Good Friday | day after Thanksgiving Day |
| Patriot's Day | ½ day before Christmas Day |
| Memorial Day | Christmas Day |
| Independence Day | |

In addition to the foregoing holidays, all such additional holidays as may be established by the President of the United States, the Congress, the Governor or the Legislature of the Commonwealth of Massachusetts shall be celebrated in the same manner.

## ARTICLE VIII
## INSURANCE

The Superintendent shall be eligible for such medical, dental, and life insurance coverage and rates as is currently provided to all municipal employees or such successor medical insurance coverage as may be implemented for said employees.

## ARTICLE IX
## BEREAVEMENT LEAVE

The Superintendent shall be granted leave without loss of pay in the event of death in his immediate family. Such leave shall be five (5) days for spouse, mother, father and children and three (3) days for all other immediate family members, excluding the day of the death and shall be for the purpose of attending the services for the deceased. For the purpose of the Article, the term "immediate family" shall mean and include the following:

| | | | |
|---|---|---|---|
| Spouse | Brother | Grandmother | Grandfather |
| Child | Mother | Father | Son-in-Law |
| Daughter-in-Law | | Sister | Grandson |
| Mother-in-Law | | Father-in-Law | Brother-in-Law |
| Sister-in-Law | | Granddaughter | Stepchildren |

In addition, if the deceased lives more than one hundred (100) miles from the City of Chicopee, the Superintendent will be granted one (1) day to travel to the location and one (1) day to return. Said travel to be exclusive of the three (3) days set above.

## ARTICLE X
## JURY DUTY

If the Superintendent's service on a jury causes him to lose regularly scheduled work, the Superintendent will receive for the period of the jury service the difference between jury duty reimbursement and regular pay computed at straight time on the current hourly rate.

## ARTICLE XI
## LONGEVITY

The Superintendent shall be eligible for longevity as provided to municipal employees under the UFCW Administrative collective bargaining unit.

Payment will be made on the first payroll in July. If the anniversary date is reached and the services are terminated due to retirement, death or voluntary termination, the Superintendent shall be paid the full amount of longevity compensation due for that year, with the final pay.

## ARTICLE XII
## SEVERENCE PAY

In the event the Superintendent's employment is terminated in accordance with Article II (Terms of Service) or re-appointment is not made without cause, he shall be paid two (2) weeks of severance pay for every year of service not to exceed twenty-six (26) weeks.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

The Superintendent agrees that the DPW Administrative offices will be open during the required hours established by the Mayor and City Council.

There is a reasonable expectation that the Superintendent will average a minimum of thirty-five (35) hours per week.

The Superintendent agrees to fulfill the reasonable responsibilities assigned during the implementation of a reasonable employee performance review system, as established by the Human Resources Department.

## ARTICLE XIV
## INDEMNIFICATION

The City shall defend, save harmless and indemnify the Employee against any tort, professional liability claim, demand, or other legal action whether groundless or otherwise, arising out of an alleged act or omission occurring in the performance of his duties as Superintendent, even if said claim has been made following his termination from employment, provided that the Employee acted within the scope of his duties as provided under the extent of Massachusetts General Laws, Chapter 258. The City may compromise and settle any such claim or suit and pay the amount of any settlement or judgment rendered thereon without recourse to the Employee. The City shall reimburse the Superintendent for any attorney's fees and costs incurred by the Superintendent in connection with such claims or suits involving the Superintendent in his professional capacity. This Section shall survive any termination of this Agreement.

All parties agree that the benefits of this agreement shall be

IN WITNESS WHEREOF, of the day of , the City of Chicopee has caused its corporate seal to be hereto affixed in its name and behalf by the Mayor, Michael D. Bissonnette and Jeffrey Neece, Superintendent of Public Works.


CITY OF CHICOPEE


By: _____          By: _____
    Michael D. Bissonnette                    Jeffrey Neece,
    Mayor                                     Superintendent of Public Works


Approved As To Form:

_____
Karen T. Betournay
City Solicitor

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT DEPARTMENT

HAMPDEN COUNTY, ss

SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.:

JEFFREY A. NEECE,                    )
      Plaintiff,                    )
                                    )
                                    )
v.                                   )
CITY OF CHICOPEE and                 )
SHARYN RILEY,                        )
      Defendants.                   )

## PLAINTIFF'S STATEMENT OF ESTIMATED MONEY DAMAGES

Pursuant to M.G.L. c. 212 § 3A, Plaintiff, JEFFREY A. NEECE, through counsel, sets forth the following estimate of money damages and factual basis thereof.

| Category | Amount | Factual Basis |
|---|---|---|
| Claims of: <br> 1. Breach of contract, and <br> 2. Failure to pay wages and provide other benefits in violation of the Wage Act, G.L. c. 149, § 148, and the Fair Labor Standards Act, 29 USC § 206 | At least $38,038.54 (single damages) | Defendants' failure through October 26, 2018, to pay straight salary wages and provide medical benefits under the Employment Contract. [Amount does not yet include amounts owed for the value of the dental/life insurance and other benefits.] |
| Retaliation/termination in violation of G.L. c. 149, § 185 | At least $610,000 | Approximate amount Plaintiff would have received in straight salary wages and medical benefits had the City not failed (in retaliation against Plaintiff for his taking protected action under the relevant statute) to renew Plaintiff for a subsequent five year contract. [Amount does not yet include the value of the dental/life insurance and other benefits Plaintiff was precluded from receiving.] |

For purposes of compliance with M.G.L. c. 212 § 3 and 3A, the foregoing does not include the statutory damage award of triple damages, nor does it include attorney's fees.

Respectfully submitted,
JEFFREY A. NEECE
By His attorney:

Emily E. Smith-Lee (BBO# 634223)
esmithlee@slnlaw.com
SLNLAW LLC
46 South Main Street
Sharon, MA  02067
Tel: 781-784-2322
Fax: 781-328-1772

Dated: October _____, 2018